*Formatted for Electronic Distribution*                                                    *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
February 20, 2015

_____

**In re:**
    **Michael Anthony Strait,**                                    Chapter 7 Case
            **Debtor.**                                                  # 14-10041
_____

**Rentrak Corporation,**
        **Plaintiff,**                                               Adversary Proceeding
    v.                                                                # 14-1008
**Michael Anthony Strait,**
        **Defendant.**
_____

| *Appearances:* | W. Scott Fewell, Esq. | Michael Anthony Strait |
| --- | --- | --- |
| | *Dinse Knapp & McAndrew PC* | Pro Se |
| | *Burlington, Vermont* | *Island Pond, Vermont* |
| | *For the Plaintiff* | *For the Defendant* |

**MEMORANDUM OF DECISION**
**GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

      The Plaintiff and Defendant in this action had a business relationship for approximately nine years commencing in the spring of 2000, which ended badly, resulted in the Plaintiff obtaining a judgment in excess of $200,000 against the Defendant, and is now the focus of the litigation before this Court. The Plaintiff asserts that the Defendant should not be permitted to discharge the Plaintiff's debt in this case because the debt arose through either the Defendant's defalcation while acting as a fiduciary on behalf of the Plaintiff or the Defendant's intentional and malicious injury of the Plaintiff's property. The Plaintiff has the burden of proving the facts necessary to demonstrate a right to this relief.

      Each of the parties has filed a motion for summary judgment, asserting there are no material facts in dispute and the record is sufficient for the Court to grant judgment on the legal issues presented.

For the reasons set forth below, the Court finds there are no material facts in dispute with respect to the fiduciary defalcation claim and the Defendant is entitled to judgment as a matter of law on that cause of action, but there are material facts in dispute with the respect to the Plaintiff's allegation of intentional and malicious injury to its property, so summary judgment cannot be entered on that cause of action. Accordingly, the Court will grant summary judgment to the Defendant on Count I of the Plaintiff's complaint and set a trial on Count II of the Plaintiff's complaint.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by Chief Judge Christina Reiss on June 22, 2012.

The Court declares the claims addressed by the instant summary judgment motions to be core matters under 28 U.S.C. § 157(b)(2)(I), over which this Court has constitutional authority to enter a final judgment.

## PROCEDURAL HISTORY

Michael Strait (the "Defendant") filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 30, 2014 (doc. # 1 in main case # 14-10041). Creditor Rentrak Corporation (the "Plaintiff") commenced this adversary proceeding with the filing of a complaint on May 2, 2014 (the "Complaint") (doc. # 1 in adversary proceeding # 14-1008)[1] which sets forth two bases for excepting the Plaintiff's debt from discharge in the Defendant's Chapter 7 case: Count I asserts a defalcation by the Defendant when he was acting in a fiduciary capacity, under 11 U.S.C. § 523(a)(4),[2] and Count II asserts the Defendant intentionally and maliciously caused injury to the Plaintiff's property, under § 523(a)(6). The Defendant, who is representing himself in this proceeding, filed a timely answer to the Complaint (the "Answer") (doc. # 4), and on June 25, 2014, the Defendant filed a motion for summary judgment with a statement of undisputed material facts (the "Defendant's MSJ" and "Defendant's SUMF") (doc. # 9). Thereafter, a scheduling order (doc. # 11) was entered. On July 24, 2014, the Plaintiff filed a document captioned as opposition to the Defendant's MSJ and Plaintiff's cross-motion for summary judgment ("Plaintiff's MSJ") (doc. # 17) along with a document captioned as a response to the Defendant's statement of uncontroverted facts and the Plaintiff's statement of undisputed material facts (the "Plaintiff's Response" and "Plaintiff's SUMF") (doc. # 18). On August 4, the Defendant filed a motion to strike all aspects of the Plaintiff's opposition (doc. # 19) based upon the fact that it was not timely filed. The Court entered an Order (doc. # 23) denying that motion to strike and setting deadlines for the parties to file written opposition and replies to the pending motions for summary judgment. The Defendant timely filed a reply (doc. # 20) (the "Defendant's Reply") to the Plaintiff's opposition to the Defendant's MSJ and a response

---

[1] All citations to the docket refer to adversary proceeding # 14-1008 unless otherwise indicated.
[2] All statutory citations refer to Title 11 United States Code (the "Bankruptcy Code"), unless otherwise indicated.

2

in support of his statement of undisputed facts (the "Defendant's Response") (doc. # 21), as well as an opposition to the Plaintiff's MSJ (the "Defendant's Opposition") (doc. # 28). The Plaintiff filed a reply to the Defendant's Opposition (doc. # 29) (the "Plaintiff's Reply"). On October 22, 2014, the Plaintiff filed an amended complaint (doc. # 31) solely to redact personal identifier information included in the complaint. The matter is now fully submitted.

## ISSUES PRESENTED

This adversary proceeding raises the legal issue of whether the Plaintiff's debt will remain enforceable against the Defendant after the entry of discharge in this case, either because the Defendant incurred the debt through defalcation while he was acting as a fiduciary for the Plaintiff, or because the debt arises as a result of the Defendant's intentional and malicious injury to the Plaintiff's property. The threshold question before the Court in the two motions for summary judgment is whether the record contains undisputed material facts sufficient for the Court to determine one of the parties is entitled to judgment as a matter of law on either or both of the causes of action the Plaintiff alleges in its Complaint.

## DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56; Fed.R.Bankr.P. 7056; see also Bronx Household of Faith v. Bd. of Educ. of the City of New York, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing there is no genuine issue of material fact. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 579 (2d Cir. 2006).

### B. COUNT I: THE § 523(A)(4) CAUSE OF ACTION

The gravamen of the Plaintiff's Count I cause of action is that pursuant to the terms of the agreements between the Plaintiff and Defendant, the Defendant owed a fiduciary duty to the Plaintiff; the Defendant breached this duty by failing to (i) remit the amounts due under the agreements, (ii) provide electronic reports, and (iii) return the Plaintiff's property; and this breach of duty directly caused economic harm to the Plaintiff (Complaint ¶¶ 41 - 43).

The Bankruptcy Code section upon which the Plaintiff relies provides in relevant part:

3

    (a) A discharge under section 727 [and certain other sections of the Bankruptcy Code] does not discharge an individual debtor from any debt –

…

    (4)    for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4) (2014).

### *1. Findings of Undisputed Material Facts With Respect Count I*

Based upon the record in this case, and particularly the parties' summary judgment pleadings, the Court finds the following facts to be material and undisputed with respect to this cause of action.

<u>Background Facts:</u>

1. The Defendant resides in Island Pond, Vermont. Complaint ¶ 1; Answer ¶ 1.

2. The Defendant filed a Chapter 7 petition on January 30, 2014. Complaint ¶ 1; Answer ¶ 1.

3. The Plaintiff is an Oregon corporation with its principal place of business located in Oregon. Complaint ¶ 2.

4. The Defendant was an officer and shareholder in MT Ventures, Inc. ("MT Ventures"), an Indiana corporation authorized to do business in the states of Indiana and Vermont. It operated several retail video rental stores located in both Indiana and Vermont. Complaint ¶ 4a; Answer ¶ 4a.

5. MT Ventures and the Plaintiff had a business relationship since at least April 29, 2000, in which MT Ventures leased pre-recorded DVDs for rental and sales to consumers. Complaint ¶¶ 4b-7; Plaintiff's SUMF; Defendant's Response ¶¶ 1-4.

6. On or about June 13, 2008, the Defendant, as president and sole shareholder of MT Ventures, executed an agreement pursuant to which MT Ventures was permitted to continue leasing DVDs (the "Agreement"). Complaint ¶ 8 and Exhibit B; Answer ¶ 8; Plaintiff's SUMF ¶ 5; Defendant's Response ¶ 5.

7. The Defendant executed a personal guaranty for full and complete payment and performance of the Agreement (the "Guaranty"). Complaint ¶ 9 and Exhibit B; Answer ¶ 9; Plaintiff's SUMF ¶ 6; Defendant's Response ¶ 6.

8. Pursuant to the Agreement, the Plaintiff leased DVDs to MT Ventures on a revenue sharing arrangement for re-leasing; lease terms and revenue sharing percentages were set on a title-by-title basis by studios. Complaint ¶¶ 10-11; Answer ¶¶ 10-11; Plaintiff's SUMF ¶ 7; Defendant's Response ¶ 7.

9. On or about June 29, 2009, the Defendant informed the Plaintiff that MT Ventures would be closing its stores in Vermont and would cease offering product on or about July 17, 2009. The Defendant requested that further shipments be stopped. Complaint ¶ 16; Answer ¶ 16; Plaintiff's SUMF ¶¶ 13-14; Defendant's Response ¶¶ 13-14.

10. By letter dated June 29, 2009, the Plaintiff informed the Defendant that cessation of rental activity would result in the early termination of the Agreement between the Plaintiff and MT Ventures and would result in the Defendant receiving a Notice of Default and Contract Termination, Demand for Return of Property and Demand for Payment of Outstanding Balance letter. The Defendant countersigned this letter, provided an address where to send correspondence, and returned the letter to the Plaintiff. Complaint ¶ 17; Answer ¶ 17; Plaintiff's SUMF ¶ 15 and Exhibit E; Defendant's Response ¶ 15.

11. MT Ventures ceased rental and sale of the Plaintiff's DVDs on July 13, 2009. Defendant's SUMF ¶ 3, Plaintiff's Response ¶ 3.

<u>Undisputed Facts Relating to the Alleged Defalcation by a Fiduciary:</u>

12. The Agreement required MT Ventures to use a compatible point of sale computer system to record rentals and sales, and electronically report information to the Plaintiff daily. Complaint ¶ 15; Answer ¶ 15; Plaintiff's SUMF ¶ 10; Defendant's Response ¶ 10.

13. The Agreement stated that it imposed a fiduciary duty on MT Ventures to hold and remit the Plaintiff's portion of the rental and sales proceeds and to report to the Plaintiff as required by the Agreement. Complaint ¶ 15; Answer ¶ 15.

14. On or about July 20, 2009, MT Ventures ceased making daily electronic reports to the Plaintiff. Complaint ¶ 18; Answer ¶ 18.

15. The Plaintiff representatives spoke with someone at both of MT Venture's store locations on July 21, 2009, and confirmed the stores were no longer renting or selling product. Complaint ¶ 19; Answer ¶ 19; Plaintiff's SUMF ¶ 17; Defendant's Response ¶ 17.

16. The Defendant authorized weekly ACH withdrawals from MT Ventures' checking account, payable to the Plaintiff, through July 2009. Complaint ¶ 22; Answer ¶ 22; Defendant's SUMF ¶ 1; Plaintiff's Response ¶ 1.

17. The Plaintiff did not require MT Venture to maintain a separate account for business funds. Defendant's SUMF ¶ 2; Plaintiff's Response ¶ 2.

18. The Defendant did not comply with the Plaintiff's demands for payment of outstanding balances including the Plaintiff's portion of the rental and sales proceeds. Plaintiff's SUMF ¶ 22; Defendant's Response ¶ 22.

19. Around and after the time of default, the Defendant used income from MT Ventures to pay personal expenses, including his mortgage, property taxes, life insurance, and health insurance. Plaintiff's SUMF ¶ 23; Defendant's Response ¶ 23.

20. The only provision in the various agreements between the parties that mentions the word "trust" or "fiduciary" states:
> You [MT Ventures] have a fiduciary duty to us [the Plaintiff] to hold and limit all fees and charges to us and to report to [the Plaintiff] in accordance with the terms of this Agreement. You [MT Ventures] agree to hold in trust for us [the Plaintiff] our share of the rental sales and proceeds you receive.

Complaint Exhibit B, p.2 ¶ 8.6.

### *2. Legal Analysis of Count I*

The question of what a plaintiff must prove to prevail on a § 523(a)(4) cause of action was before this Court four years ago. At that time, the Court relied upon a well-established three part test:

> To "prevail on a claim of nondischargeability under Section 523(a)(4), the burden is on the party claiming nondischargeability, and the party must meet its burden by a preponderance of the evidence. Exceptions to discharge under Section 523(a) must be strictly construed in favor of the debtor in order to comply with the 'fresh start' policy underlying the Bankruptcy Code." <u>In re Duncan</u>, 331 B.R. 70, 76 (Bankr. E.D.N.Y. 2005) (citations omitted). A creditor must establish three elements in order to have a debt excepted from discharge under § 523(a)(4): First, the debt must result from a fiduciary's defalcation under an 'express or technical trust' involving the

5

> entrusting of money or other property to a fiduciary for the benefit of another. Second, the debtor must have acted in a fiduciary capacity with respect to the trust. Third, the transaction in question must be a 'defalcation' within the meaning of bankruptcy law.

Rentrak Corp. v. Ladieu (In re Ladieu), 2011 Bankr. LEXIS 721, *44-45 (Bankr. D. Vt. Feb. 24, 2011). Since that time, the U.S. Supreme Court has weighed in on the third prong of the test, to more precisely define the scope of the term "defalcation" for purposes of § 523(a)(4):

> The term "defalcation" includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.

Bullock v. Bankchampaign, N.A., 133 S.Ct. 1754, 1755 (2013). Otherwise, however, the standard the Court previously applied has not changed. Thus, the burden is on the Plaintiff to prove by a preponderance of the evidence that (i) it had an actual trust with the Defendant, (ii) the Defendant acted in a fiduciary capacity under that trust, and (iii) the Defendant's conduct constitutes a defalcation of his duty under bankruptcy law.

*First Prong: Did the parties create a trust?*

The only provision in the Agreement that uses the term "trust" is a fairly inconspicuous one, at the end of the next to last paragraph of the "Miscellaneous" section, on the last page of the contract. It states:

> You [MT Ventures] have a fiduciary duty to us [the Plaintiff] to hold and limit all fees and charges to us and to report to [the Plaintiff] in accordance with the terms of this Agreement. You [MT Ventures] agree to hold in trust for us [the Plaintiff] our share of the rental sales and proceeds you receive.

Complaint Exhibit B, p.2 ¶ 8.6. The Defendant executed the Agreement, as president of MT Ventures, and also executed the Guarantee, assuming personal liability for the corporate entity's obligations under the Agreement. Since the Defendant does not dispute that the Guarantee encompasses all of MT Ventures' duties under this provision, for purposes of this adversary proceeding, the Court assumes without deciding that this provision binds the Defendant individually.

In a similar circumstance, this Court has previously determined that where state law is applicable in determining whether a debtor has committed the tort of defalcation, Vermont law controls.[3] Rentrak Corp. v. Ladieu (In re Ladieu), 2011 Bankr. LEXIS 721, * 49-50 (Bankr. D. Vt. Feb. 24, 2011). The

---

[3] In Rentrak Corp. v. Ladieu (In re Ladieu), 2011 Bankr. LEXIS 721, the Court applied tort choice-of-law principles to conclude that Vermont law was controlling. Factors considered included: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. In Ladieu, the Court was faced with an injury occurring in Vermont, conduct causing the injury occurring in Vermont, an entity formed under the law of Vermont and doing business in Vermont, and a relationship centered in Vermont. Here, the sole difference is that the Defendant's corporation, MT Ventures, is an Indiana corporation. This one difference does not alter the Court's conclusion that Vermont law controls.

Plaintiff, however, argues that Oregon law should control. For the sake of completeness, the Court will address the law of both states.

Under Vermont law,

> "An express trust arises because the parties intended to create it. A constructive trust is not based upon the intention of the parties but is imposed in order to prevent one of them from being unjustly enriched at the expense of the other."

Savage v. Walker, 2009 VT 8, ¶ 8 (citing 5 A. Scott, SCOTT ON TRUSTS § 462.1, at 311 (4th ed. 1989)). Neither party argues that a constructive trust exists between the parties, so the Court focuses its attention on the question of whether the Agreement created an express trust. There is some, albeit sparse, law in Vermont describing the manner in which an express trust may be created, or defining the characteristics from which the existence of an express trust may be derived. "An express trust arises because the parties intended to create it." Savage v. Walker, 2009 VT at ¶ 8. "The nature of that transaction and the relation of the parties may contribute to the proof of the fiduciary relationship." Mahoney v. Leddy, 126 Vt. 98, 101 (1966); see Methodist Church v. First Nat'l Bank, 125 Vt. 124, 129 (1965). The same standard applies under Oregon law. "[Under Oregon law] [a]n express trust is one in which the circumstances show that the grantor of the property intended to create a trust." Lozano v. Summit Prairie Cattlemen's Ass'n, 155 Ore. App. 32, 37 (Or. Ct. App. 1998).

Each state also has a statute which sets out the elements that must be present to create an express trust. The Vermont statute dealing with trusts provides that a trust is created only if "(1) the settlor has capacity to create a trust; (2) the settlor indicates an intention to create the trust; (3) the trust has a definite beneficiary . . . (4) the trustee has duties to perform; and (5) the same person is not the sole trustee and sole beneficiary of all beneficial interests." 12A V.S.A. § 402. The Oregon statute is almost identical; it provides that "[a]n express trust is created only if all of the following requirements are met: (1) the settlor has capacity to create a trust; (2) the settlor indicates an intention to create the trust; (3) the trust has a definite beneficiary; (4) the trustee has duties to perform; and (5) the same person is not the sole trustee and sole beneficiary." ORS § 130.155.

Additionally, both Vermont and Oregon have case law holding that a fiduciary relationship must exist if there is to be an express trust. See Lozano v. Summit Prairie Cattlemen's Ass'n, 155 Ore. App. at 38 ("An essential aspect of an express or a resulting trust is that the putative trustee has received property under conditions that impose a fiduciary duty to the grantor or a third person. A mere contractual obligation, including a contractual promise to convey property, does not create a trust.") (emphasis added); Mahoney v. Leddy, 126 Vt. at 101 (1966) ("The nature of that transaction and the relation of the parties may contribute to the proof of the fiduciary relationship.") (emphasis added).

However, neither party has cited, and the Court is not aware of, any case law or statute in either Vermont or Oregon which construes agreements that purport to create an express trust in a commercial context. This is the critical inquiry for the first prong of the § 523(a)(4) test and the applicable state law, whether Vermont or Oregon, sheds no light on this question.

Since there is no case law or statutory guidance in either Vermont (which the Court deems the controlling law) or Oregon (which the Plaintiff asserts should control) that specifies the elements necessary for creation of an express trust in commercial transactions, and since both states require a finding of a fiduciary relationship as a necessary component of a trust, the Court defers ruling on whether the Agreement created a trust until it determines whether the Agreement created a fiduciary relationship.

*Prong 2: Was the Defendant acting as a fiduciary under the Agreement?*

As a preliminary point, the Court addresses the scope of this inquiry. The Plaintiff's argument under Count I includes numerous references to the Defendant's conduct with respect to maintaining and returning the Plaintiff's DVDs, and asserts that the Defendant's failure to return the DVDs to the Plaintiff is one of the acts that constitutes defalcation by the Defendant. These arguments are without merit because the scope of the contract clause including the fiduciary language is limited to duties with respect to funds the Defendant was handling, and, importantly, makes no mention of any duties with respect to the DVDs:

> You [MT Ventures] have a fiduciary duty to us [the Plaintiff] <u>to hold and limit all fees and charges</u> to us and to report to [the Plaintiff] in accordance with the terms of this Agreement. You [MT Ventures] agree to hold in trust for us [the Plaintiff] <u>our share of the rental sales and proceeds</u> you receive.

Complaint Exhibit B, p.2 ¶ 8.6 (emphasis added). Therefore, the Plaintiff is not entitled to relief under Count I on any allegation relating to property other than money, and the Court will limit its analysis to whether the Defendant breached a fiduciary duty, with respect to either his management of funds or payments to the Plaintiff, under the Agreement.

To prevail on this prong of the § 523(a)(4) test, the Plaintiff must establish that the Defendant "was acting in a fiduciary capacity <u>as this term has been construed by federal courts</u>." <u>Congress Financial Corp., v. Levitan (In re Levitan)</u>, 46 B.R. 380, 384 (Bankr. E.D.N.Y. 1985) (emphasis added). Federal law governs this question. <u>Andy Warhol Found. v. Hayes</u> (<u>In re Hayes</u>), 183 F.3d 162, 167 (2d Cir. 1999), <u>In re Wood</u>, 488 B.R. 265, 275 (Bankr. D. Conn 2013). "Not all fiduciary relationships fall with the discharge exception." <u>Chriswell v. Alomari (In re Alomari)</u>, 486 B.R. 904, 915 (Bankr. ND Ill, 2013). The § 523(a)(4) exception must not be extended to apply to ordinary commercial debts. <u>In re Hayes</u>, 183 F.3d at 169.

8

The Agreement includes only a single clause with the terms "trust" and "fiduciary." That clause, standing alone, is not enough to create a trust or a fiduciary relationship. Davis v. Aetna Acceptance Co., 293 U.S. 328, 333-34 (1934) (holding security agreement does not create a trust for purposes of the fiduciary defalcation provision of the Bankruptcy Code solely because the word trust is used; the conduct in question must reflect an intention by the parties to create a fiduciary relationship). Moreover, the Agreement appears to be primarily (if not exclusively) an ordinary commercial lease of personal property. Where an agreement sets out terms of a commercial transaction, courts are loath to impute fiduciary obligations. See Levitan, 46 B.R. at 380.

In Levitan, the creditor seeking relief had loaned money to the corporation in which the debtor was a principal, and the loan agreement included a provision that the borrower would hold certain proceeds "as [the creditor's] property, and as trustee of an express trust for [the creditor's] benefit." Id. at 382 (bracketed text in original). The president of the corporate borrower executed the loan agreement and the debtor signed a guaranty of that agreement. After examining the history of how the federal courts discern the existence of a fiduciary relationship, the Levitan court found that the term fiduciary does not include "commercial debtor-creditor transactions in which the debtor merely violated the terms of his agreement with the creditor." Id. at 385. The instant Agreement has similar terms, requiring the Defendant to hold the Plaintiff's share of the rental sales and proceeds MT Ventures receives in trust for the Plaintiff, see Complaint Exhibit B, p.2 ¶ 8.6. Thus, this Court is reviewing terms almost identical to those set out in the Levitan agreement. The Levitan court acknowledged that notwithstanding the clarity of the trust language, it would be improper to except the creditor's debt from discharge based upon alleged defalcation of fiduciary duties when the crucial language purportedly imposing the fiduciary obligations was simply dropped into what was otherwise a standard commercial document:

> "The exceptions to discharge were not intended and must not be allowed to swallow the general rule favoring discharge." In re Cross, 666 F.2d 873, 880 (5th Cir. 1982). If security agreements like the one signed by [the corporate borrower] and the creditor were found to impose a fiduciary obligation upon the debtor, creditors could easily make fiduciaries out of ordinary commercial debtors and the exception might indeed swallow the rule.

Id. at 386. This Court finds the Levitan court's admonition compelling. The creation of a trust is of an entirely different ilk than the structuring of a commercial relationship. The former is an act by one party to protect the other party (or the other party's property) out of legal or moral duty. By contrast, the latter is a business-driven enterprise. In a commercial transaction, the lender/lessor requires the borrower/lessee to agree to a repayment schedule, a price, an interest rate, and collateralization terms as the quid pro quo for the loan or lease. The lender/lessor offers terms based upon the risk involved, and the borrower/lessee accepts if the terms are agreeable. It is a contract of mutual obligations, designed to produce mutual

9

benefit. Terms extending special protection to only one of the parties, without a corresponding offset, are anomalies. For these reasons, it is not surprising the courts have been quite hesitant to impute trust or fiduciary obligations in commercial transactions. This is particularly so where, as here, there is only one provision in the controlling document that makes any reference to the creation of a trust or fiduciary duty, in what is otherwise a standard, garden-variety commercial relationship.

To prove there was actually a fiduciary relationship between these parties, the Plaintiff must establish that the parties recognized, and acted in accordance with, a fiduciary relationship prior to the occurrence of wrong doing that gave rise to the debt. In re Glogower, 320 Fed Appx. 809 (9th Cir. 2009). The Plaintiff argues the Defendant indeed acted as a fiduciary prior to the payment default by regularly paying over to the Plaintiff the Plaintiff's share of the DVD rental and sales income. This argument fails. There was no requirement in the Agreement for, and the record reflects that neither MT Ventures now nor the Defendant ever set up, a segregated account for the sole benefit of the Plaintiff from which the Defendant paid all sums due to the Plaintiff. On the contrary, the record shows that the Defendant had a single business account out of which he both made weekly payments to the Plaintiff, and paid his other business and personal expenses. See this Court's findings of undisputed material facts, ¶¶ 16, 17, 19, infra (hereafter "FMF"). This is exactly what would be expected in a commercial transaction, where the parties have an intrinsically contractual – not fiduciary – relationship. The undisputed material facts do not establish that the Defendant acted as a fiduciary on behalf of the Plaintiff prior to default; he acted as one would pursuant to a commercial lease, and nothing more.

The Plaintiff has raised this question before; it has asked other bankruptcy courts to except its debt from discharge under an agreement very similar to the Agreement before this Court. See Rentrak Corp. v. Johnson (In re Johnson), 2006 Bankr. LEXIS 1990 (Bankr. M.D. Fla. May 12, 2006); Rentrak Corp. v. Neal (In re Neal), 300 B.R. 86 (Bankr. M.D. Ga. 2003); Rentrak Corp. v. Cady (In re Cady), 195 B.R. 960 (Bankr. S.D. Ga. 1996); Rentrak Corp. v. Forbes (In re Forbes), 186 B.R. 764 (Bankr. S.D. Fla. 1995). One of those cases specifically addresses the question of whether the debtor was in a fiduciary relationship with the Plaintiff under a Rentrak agreement, for purposes of § 523(a)(4). The Johnson case involved two crucial facts presented here: a payment default, and a contract term that the leased DVDs as well as Rentrak's share of the rental and sales proceeds were Rentrak's property. There, the bankruptcy court held that the Rentrak lease term at issue, similar if not identical to the provision here, did not create a fiduciary relationship. Rentrak v. Johnson (In re Johnson), 2006 Bankr. LEXIS 1990 at *16. While not binding on this Court, the ruling in Johnson is instructive since it involves similar facts and contract terms, with respect to the fiduciary relationship inquiry.

Many cases discussing the elements of § 523(a)(4) blend the analysis of whether there is a trust with whether there is a fiduciary relationship, since the two terms – and two prongs of the salient test – are so intertwined. Courts generally look for a fiduciary relationship in their scrutiny of whether there is a trust, and view proof of the former as critical to a finding of the latter. This makes the distinction between the first two prongs of this three-prong test a bit murky. Frequently, the federal cases examining the question of whether the debtor acted in a fiduciary capacity encase that examination within a discussion of whether the parties had actually created a trust. This is true, for example, in the <u>Monson</u> case where the court was considering a creditor's § 523(a)(4) dischargeability challenge based upon an agreement in which the lender was to fund the debtor's startup and management of an internet center. The agreement between the parties stated "[t]he parties further acknowledge that because of the special relationship of trust that is require herein, they maintain a fiduciary relationship to each other, and any breach thereof will be compensable by direct, indirect, consequential and punitive damages." On summary judgment, the bankruptcy court found that this was not sufficient to create an express trust or fiduciary relationship. The court found the agreement established a business arrangement only:

> The case is unlike other cases in which a "fiduciary capacity" has been found. …
>
> The record in this case does not indicate that the Debtor had any superior expertise in the management of internet centers, or that he was to operate the Centre for the sole benefit of the Plaintiff. Instead, the Debtor was to manage the business with a view to dividing the profits between the parties as allocated in the Agreement.
>
> Further, the [ ] account was not a segregated account.

<u>Galaz v. Monson (In re Monson)</u>, 2013 Bankr. LEXIS 3089 *11 (MD Fla, July 31, 2013). Although the above-quoted language appears directed at the question of whether the debtor was acting as a fiduciary, the court immediately follows this analysis with a finding that the agreement does not create an express or technical trust with the meaning of § 523(a)(4), the conclusion that the creditor has therefore failed to show a required element of § 523(a)(4), and a grant of summary judgment to the debtor. The pertinent language in the <u>Monson</u> agreement is comparable to the language in the instant Agreement, in articulating a fiduciary relationship. Nonetheless, the court declined to impose fiduciary duties on the debtor and, as a result of that determination, found that no express trust was created under the parties' commercial financing document.

Similarly in the <u>Long</u> case, the Eighth Circuit Court of Appeals scrutinized an agreement which required proceeds from certain accounts to be deposited into a special "collateral" account maintained by the debtor's business entity, and that business entity agreed to become trustee of an "express trust." <u>In re Long</u>, 774 F.2d 875, 875-78 (8th Cir. 1985). There, the court found the debtor had not assumed liability for the duties arising under the pertinent terms of the agreement. It held that even if it were to find the

11

debtor had assumed that liability, the court would find the debtor was not a trustee in the "strict and narrow sense" required to bar discharge under § 523(a)(4). The court concluded that the relationship between the parties was "intrinsically more contractual than fiduciary." Id. at 878-879.

In sum, the Court finds federal law governs the determination of whether a fiduciary relationship exists for purposes of the defalcation exception to discharge under the Bankruptcy Code, the definition of a fiduciary relationship for federal law purposes is more exacting than most state law definitions, typical commercial transactions do not include fiduciary relationships that satisfy the federal criteria, federal courts which have scrutinized agreements similar to the one at bar have found them insufficient to establish a fiduciary relationship, and the undisputed material facts do not demonstrate that the parties had a fiduciary relationship sufficient to meet the federal bankruptcy law definition.

Having found that the Agreement does not impose a fiduciary duty enforceable in a bankruptcy case, the Court also finds that the Agreement does not create a trust for purposes of § 523(a)(4). Therefore, the Plaintiff has failed to establish both the first and second prongs of the applicable test.

*Prong 3: Did the Defendant commit defalcation while acting as a fiduciary under the Agreement?*

To prevail on this prong, the Plaintiff must establish that the Defendant's failure to remit the funds in question was a "defalcation within the meaning of bankruptcy law." Rentrak Corp. v. Ladieu, 2011 Bankr. LEXIS 721 at *44. The Supreme Court recently discussed in detail the type of conduct which constitutes defalcation under § 523(a)(4) in the Bullock case. Bullock v. BankChampaign, N.A., 133 S. Ct. 1754 (U.S. 2013). There, the Court held:

> The term "defalcation" includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.

Bullock v. Bankchampaign, N.A., 133 S. Ct. at 1755. The Court went on to state

> where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

Id. at 1759-60 (internal citations and quotations omitted).[4]

The Supreme Court in Bullock adopted a standard similar to that employed by the Second Circuit in addressing the same issue. Thus, Second Circuit precedent on this issue remains good law. See Chitester v. Watterson (In re Watterson), 2015 Bankr. LEXIS 43 at *13-14 (Bankr. E.D.N.Y. Jan. 8, 2015) ("The Second Circuit, as recognized by the Supreme Court, was employing a similar standard [to that employed by the Supreme Court in Bullock]"). In the Hyman case, the Second Circuit held that defalcation requires "a showing of conscious misbehavior or extreme recklessness-a showing akin to the showing required for scienter in the securities law context." Denton v. Hyman (In re Hyman), 502 F.3d 61, 68 (2d Cir. N.Y. 2007). The Second Circuit cautioned that:

> By requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation, the standard ... insures that the harsh sanction of non-dischargeability is reserved for those who exhibit some portion of misconduct. The standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable.

Id. at 68-69 (internal citations and quotations omitted). Post-Bullock, courts in the Second Circuit have continued to apply this standard in harmony with that articulated by the Supreme Court in Bullock. See, e.g., Chitester v. Watterson (In re Watterson), 2015 Bankr. LEXIS 43; Pierce v. Steevens (In re Stevens), 2014 Bankr. LEXIS 4860 (Bankr. N.D.N.Y. Nov. 25, 2014).

Here, even drawing all inferences in favor of the Plaintiff, the undisputed material facts do not demonstrate the kind of "conscious misbehavior" or "misconduct" necessary to support a finding of defalcation. The undisputed material facts establish the Defendant was aware of the Agreement between the parties, and aware MT Ventures owed money to the Plaintiff at the time it ceased operating. FMF ¶¶ 6-7, 10, 13. The undisputed material facts also establish that the Defendant did not pay that outstanding balance. FMF ¶ 18. However, there is nothing in the undisputed material facts that demonstrates "sufficiently culpable" "misconduct" on the part of the Defendant in failing to account for or pay all sums due to the Plaintiff which rises to the level of defalcation, as defined by Bullock.

The Plaintiff argues the Defendant's use of business income in July to pay personal expenses, such as the Defendant's mortgage, property taxes, and health insurance, is evidence of the Defendant's misconduct. FMF ¶ 19; Plaintiff's MSJ p. 12. But, the Plaintiff presents no legal argument in its motions for summary judgment that the Defendant's expenditures were improper or abnormal.[5] Plaintiff's MSJ pp.

---

[4] Here, there is no allegation of bad faith, moral turpitude, or immoral conduct by the Debtor.
[5] There is a dispute as to the nature of some of these expenditures. Plaintiff's SUMF ¶ 23; Defendant's Response ¶ 23. However, Rentrak fails to advance any argument in its MSJ (doc. # 17) or its Reply (doc. # 29) that there was any impropriety associated with these expenditures, other than the fact that the Defendant paid them rather than sums due the Plaintiff.

13

11-13, Defendant's Response ¶ 23. The Plaintiff's only legal argument is that the Defendant had funds available with which to pay the Plaintiff but instead spent those funds on his living expenses.

Moreover, the undisputed material facts establish that the Defendant did not change the way he did business at the time of the default. The Defendant authorized weekly ACH withdrawals from the company checking account, payable to the Plaintiff, throughout the business relationship, until business operations ceased. FMF ¶ 16. The Defendant continued to make payments to the Plaintiff pursuant to the parties' ordinary course of business until sales ceased and the business no longer generated revenue from which to pay the Plaintiff. When the business failed, the Plaintiff was left unpaid, like many other creditors. The Defendant's choice to continue doing business as usual, including paying his living expenses, does not constitute conscious misbehavior or recklessness found in other cases. For example, in the Watterson case, a debtor was found to have committed defalcation where he contrived to gain access to his deceased father's bank account as an administrator and proceeded to deplete it for personal gain. Chitester v. Watterson (In re Watterson), 2015 Bankr. LEXIS 43 at *16-21. Similarly, in the Shao Ke case, a debtor was found to have committed defalcation where he "freely took funds from the corporate piggy bank for personal use with the intention of never getting caught," in varying amounts, at different times, and without consultation or input from other shareholders in the venture. Wang v. Shao Ke (In re Shao Ke), 2013 Bankr. LEXIS 3314, *41-45 (Bankr. N.D.N.Y. Aug. 14, 2013).

The Plaintiff's remaining arguments concerning the Defendant's alleged misconduct center around the Defendant's failure to return the Plaintiff's DVDs. As set forth above, the parties' Agreement does not even attempt to create a fiduciary obligation with respect to return of the DVDs. The Defendant's conduct in failing to return those DVDs is not material to the issue of whether the Defendant's conduct constitutes a defalcation under the Agreement clause, and thus not material to this § 523(a)(4) analysis.

Accordingly, the Court finds that the Plaintiff has failed to meet its burden of proof as to the third prong. Since the Plaintiff also failed to meet its burden of proof as to the first two prongs, and the Court found there were no material facts in dispute with respect to this cause of action, the Defendant is entitled to judgment as a matter of law on Count I.

### C. COUNT II: THE § 523(A)(6) CAUSE OF ACTION

The gravamen of the Plaintiff's Count II cause of action is (i) pursuant to the terms of the Agreement between the Plaintiff and Defendant, the Defendant was to have possession of – but no ownership interest in – the DVDs; (ii) the Defendant's refusal and/or failure to return the DVDs to the Plaintiff upon demand, along with the Defendant's failure to notify the Plaintiff where its property was located and then allowing disposal of the DVDs, constitutes conversion; (iii) the Defendant's conversion

of the Plaintiff's property was intentional; and (iv) this conduct directly caused economic harm to the Plaintiff (doc. # 1, ¶¶ 45 - 49).

The Bankruptcy Code provision upon which the Plaintiff relies states in relevant part:

> (a) A discharge under section 727 [and certain other sections of the Bankruptcy Code] does not discharge an individual debtor from any debt –
> …
> (6)  for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6) (2014).

### 1. Findings of Material Facts With Respect Count II

Based upon the record in this case, and particularly the parties' summary judgment pleadings, the Court finds the following facts to be material and undisputed with respect to this cause of action.

21. Per the Agreement, title to the DVDs never passed to MT Ventures; DVDs remained property of the Plaintiff. Complaint ¶ 12; Answer ¶ 12; Plaintiff's SUMF ¶ 9; Defendant's Response ¶ 9.

22. On July 29, 2009, the Plaintiff sent, via certified mail, a letter titled "Notice of Default and Contract Termination and Demand for Return of Property" notifying the Defendant that the Plaintiff had terminated the Agreement, and requiring him to return certain product to the Plaintiff. This letter instructed the Defendant to return all leased DVDs to the Plaintiff within 15 days, and to pay outstanding balances within 15 days. The letter stated in bold that no credit would be given for any units not returned in their original packaging. Complaint ¶ 20; Answer ¶ 20; Plaintiff's SUMF ¶ 18; Defendant's Response ¶ 18.

23. On or before July 29, 2009, the Defendant pulled all of the Plaintiff's DVDs from stores and boxed them for storage. Complaint ¶ 21; Answer ¶ 21.

24. The Defendant moved the boxed DVDs to an unoccupied retail space, where they remained until they were disposed of by a third party sometime in or after 2012. Complaint ¶ 30; Answer ¶ 30; Plaintiff's SUMF ¶¶ 26, 28; Defendant's Response ¶¶ 26, 28.

25. The Defendant never provided notification to the Plaintiff regarding the whereabouts or disposition of its DVDs. Complaint ¶ 27; Answer ¶ 27; Plaintiff's SUMF ¶ 26; Defendant's Response ¶ 26.

26. The Defendant failed to return the DVDs because the cost of shipment was expensive, and he was unsure whether he would receive credit for the DVDs if they were not in their original packaging. Plaintiff's SUMF ¶ 24; Defendant's Response ¶ 24.

### 2. Legal Analysis of Count II

In Vermont, to prove the tort of conversion,

> the owner of property must show only that another has appropriated the property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title. Conversion may also be committed by retention of the property after the owner's rightful demand.

P.F. Jurgs & Co. v. O'Brien, 160 Vt. 294, 299, 629 A.2d 325, 328-29 (Vt. 1993) (citation omitted) (emphasis added). "The key element of conversion, therefore, is the wrongful exercise of dominion over

15

property of another." Id. at 299, 629 A.2d 329. A party making a claim for conversion "must show an immediate right to possession." Miller v. Merchants Bank, 138 Vt. 235, 239, 415 A.2d 196, 199 (Vt. 1980); see also Ag Venture, Fin. Servs, Inc. v. Montagne (In re Montagne), 413 B.R. 148, 153-54 (Bankr. D. Vt. 2009). The burden in proving conversion is upon the plaintiff. Peck v. Patterson, 119 Vt. 280, 282, 125 A.2d 813, 815 (Vt. 1956).

If, to determine the Defendant had committed the tort of conversion, this Court were required to find the Defendant appropriated the DVDs for his own use and beneficial enjoyment, or had exercised dominion over it in exclusion and defiance of the Plaintiff's rights, there might be material facts in dispute which would preclude the granting of summary judgment to either party. However, "[c]onversion may also be committed by retention of the property after the owner's rightful demand." P.F. Jurgs & Co. v. O'Brien, 160 Vt. at 299. Here, there is no dispute that, under the terms of the contract, the DVDs were the Plaintiff's property. FMF ¶ 21. Although there is some dispute over the content and nature of the communication between the parties, and some dispute over the Defendant's intent in sequestering the DVDs, there is no dispute that either the terms of the Agreement required the Defendant to return the DVDs to the Plaintiff, or that the Defendant failed to do so. FMF ¶¶ 23-25. The Court finds the Defendant retained the Plaintiff's property after the Plaintiff's rightful demand for its return, and that is sufficient, under Vermont law, for this Court to find the Defendant committed conversion. There is no need for further inquiry into the Defendant's intent.

A finding of conversion, however, is not sufficient, in and of itself, to except the Plaintiff's debt from discharge under § 523(a)(6). "Neither a claim for breach of contract nor the tort of conversion necessarily involves an intentional injury. The act of conversion, however, can result in a willful and malicious injury." Texas by & Through Board of Regents of the Univ. of Tex. Sys. v. Walker, 142 F.3d 813, 823-824 (5th Cir. Tex. 1998) (emphasis added). For the Plaintiff's debt to be excepted from discharge, the Defendant's conversion must satisfy the requisite elements of § 523(a)(6), namely, that it was both "willful and malicious."

As to willfulness, "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (U.S. 1998). Negligence is not sufficient; rather, the willfulness required under § 523(a)(6) is akin to that required under an intentional tort. See Forrest v. Bressler (In re Bressler), 387 B.R. 446, 454 (Bankr. S.D.N.Y. 2008) ("Mere negligence does not constitute willful and malicious conduct") (quotations and citations omitted). The actor must intend "'the consequences of an act,' not simply 'the act itself.'" Margulies v. Hough (In re Margulies), 517 B.R. 441, 452 (S.D.N.Y. 2014) (citing Kawaauhau v. Geiger).

16

The injury caused by the debtor must also be malicious, meaning "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (citations and quotations omitted). "Malice may be constructive or implied ... Implied malice may be demonstrated 'by the acts and conduct of the debtor in the context of [the] surrounding circumstances.'" Navistar Fin. Corp. v. Stelluti (In re Stelluti), 94 F.3d 84, 88 (2d. Cir. 1996) (citation omitted). "The element of malice may be found either upon a finding of actual malevolence or ill will, or upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor. Malice may be found where a debtor has breached a statutory duty willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstances to warrant the denial of a discharge." Forrest v. Bressler (In re Bressler), 387 B.R. at 454 (quotations omitted). A court should look to the totality of the circumstances to determine malice. Id. "[T]he key in conversion cases is to analyze each set of circumstances on a case-by-case basis to determine whether the conversion is in the nature of an intentional tort ... " United States v. Shelmidine (In re Shelmidine), 519 B.R. 385, 392 (Bankr. N.D.N.Y. 2014) (quotations and citations omitted).

Here, the Court finds that there are disputes of material fact – or a lack of clarity around certain material facts – that preclude the granting of summary judgment. In general, the lack of undisputed material facts focus on the parties' communications from the time the Defendant informed the Plaintiff that MT Ventures would be closing its stores (on or about June 29, 2009) through the time the Plaintiff's property was lost (in or after 2012). At a minimum, the parties need to present proof on the following topics before the Court can determine whether the Defendant's conversion of the Plaintiff's property was willful and malicious:

A. What communications did the parties have concerning whether, to what extent, and under what conditions the Defendant would have received credit for returning the Plaintiff's property without its original packaging? Complaint ¶ 23; Answer ¶ 23; Defendant's SUMF ¶ 6; Plaintiff's Response ¶ 6; doc. # 18-1 (hereafter "Affidavit of L. Murphy").

B. What communications did the parties have concerning the Defendant's efforts to return the property or pursue an alternative resolution, such as purchasing the property? Complaint ¶¶ 24-26; Answer ¶¶ 24-26; Plaintiff's SUMF ¶ 26-27; Defendant's Response ¶ 26-27.

C. What efforts did the Plaintiff make to contact the Defendant, or accomplish the return of the Plaintiff's property? Defendant's SUMF ¶ 8; Plaintiff's Response ¶ 8; Affidavit of L. Murphy.

D. What efforts did the Defendant make to contact the Plaintiff, including but not limited to the Defendant's efforts to contact the Plaintiff by telephone? Defendant's SUMF ¶ 6; Plaintiff's Response ¶ 6, D's Response ¶ 6, Affidavit of L. Murphy.

Each of these disputed or unclear facts may play a pivotal role in determining the Defendant's intent, which is the primary consideration in the determination of whether the Defendant's conversion of the Plaintiff's property was "willful and malicious" within the meaning of § 523(a)(6).

Accordingly, the Court denies summary judgment to both parties on Count II of the Complaint, and will hold an evidentiary hearing to resolve the disputed factual issues identified above.

## CONCLUSION

For the foregoing reasons, the Court finds, first, there are no materials facts in dispute with respect to the § 523(a)(4) cause of action, summary judgment is proper, and the Defendant has demonstrated he is entitled to judgment as a matter of law. Therefore, the debt the Defendant owes to the Plaintiff shall not be excepted from discharge on the ground that it was incurred through the Defendant's defalcation when acting in a fiduciary capacity. With respect to the cause of action arising under § 523(a)(6), the Court finds there are materials facts in dispute and therefore, summary judgment on that claim is not proper. Accordingly, the Court will set an evidentiary hearing at which the burden will be on the Plaintiff to demonstrate that the debt the Defendant owes to the Plaintiff should not be excepted from discharge because the Defendant incurred it through intentionally and maliciously injuring the Plaintiff's property.

This memorandum constitutes the Court's findings of fact and conclusions of law.

February 20, 2015  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge